UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TAMARA CIULLA-NOTO,
                            Plaintiff,                    **COMPLAINT**

v.
                                                Civil Action No. :

XEROX CORPORATION.

                            Defendants.
_____

## JURY TRIAL DEMANDED

Plaintiff demands a jury to try all claims triable by a jury.

## PRELIMINARY INTRODUCTION

1.  This is an action for the violation of Plaintiff TAMARA CIULLA-NOTO's
    ("Plaintiff") civil rights pursuant to Title VII of the Civil Rights Act of 1964, 42
    U.S.C.§§ 2000 et seq., as amended, and the New York State Human Rights
    Law, Executive Law § 290 et seq., alleging that Plaintiff was intentionally,
    unlawfully and/or willfully discriminated against on a continuing basis because of
    sex, and subject to a hostile environment based on sex, and retaliation for
    engaging in protected activity under both Title VII and the New York State
    Human Rights Law, § 290 et seq.

## JURISDICTION AND VENUE

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1331 and 1343, 42
    U.S.C. § 2000 (e), 29 U.S.C. § 1331, 29 U.S.C. §§ 206 and 216; the Court also
    has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate
    Plaintiff's claims under state law.

3.    Venue is proper pursuant to 28 U.S.C. §1391.

4.    Plaintiff first filed a charge of discrimination with the Equal Employment
       Opportunity Commission on March 24th, 2009 alleging discrimination and
       retaliation on the basis of her sex in violation of Title VII. Plaintiff subsequently
       filed 2 more charges with the EEOC on May 28, 2009, and August 25, 2009., A
       Notice of Right to Sue was issued by the EEOC on June 3rd, 2009.

## PARTIES

5.    Plaintiff is an individual  woman who was at all times relevant herein an
       employee of the defendant and a resident of the County of Monroe, State of New
       York.

6.    Defendant Xerox Corp. is a municipal corporation, operating and existing under
       the laws of the State of New York, and being located in the County of Monroe,
       State of New York.

## FACTS

7.    Plaintiff, a female, was employed by the defendant  since January 11, 1988, and
       is currently employed in the WFBC Diffuser Department, a position she has held
       since on or about 2004.

8.    Plaintiff has worked the day shift for 21 years.

9.    Plaintiff had a good faith basis to believe she was subject to a hostile
      environment based on sex that was continuing in nature.

10.   For example, in or about October of 2007, a male co-worker began the practice
      of "rubbing up" against the Plaintiff's body on one of the labs that they were
      assigned to work.

11.   Plaintiff immediately informed this male co-worker to "stop" and reminded him
      that there were cameras located in the lab.

12.   The male co-worker did not "stop" engaging in inappropriate conduct; in fact,
      shortly thereafter, this same male co-worker pulled out his penis and began
      masturbating in front of the Plaintiff while they were assigned to the same lab.

13.   In or about December of 2007,  Plaintiff began to be barraged by invitations by
      this same male co-worker to "go for a walk" with him while he simultaneously
      massaged Plaintiff's shoulders.

14.   In the same time period, this same male co-worker exposed Plaintiff to
      pornography on his work computer, which, according to Xerox policies, is *strictly
      forbidden.*

15.   In or about May of 2008, Plaintiff moved to a new location on the production floor
      and this same male co-worker began following the Plaintiff around in a stalking
      manner.

16.    In or about this same time period, this male co-worker approached Plaintiff
       where she was working at her machine, and sat in front of her with an obvious
       hole in the crotch of his pants which exposed his naked penis and pubic hair.

17.    Thereafter, Plaintiff complained to Manager Longhenry in good faith of the
       continuing and unabated inappropriate conduct of this male co-worker.

18.    A meeting was then held with Plaintiff, Manager Longhenry, and Supervisor
       Miller where Plaintiff explained the misconduct based on sex of her male co-
       worker.

19.    Manager Longberry and Supervisor Miller reported this matter to Industrial
       Relations Representative (IR) Braithwaite.

20.    Plaintiff was then contacted by IR Braithwaite, and  with security was present,
       Plaintiff recounted again the misconduct of her male co-worker on the basis of
       sex.

21.    An "investigation" ensued, but witnesses identified by the Plaintiff were never
       interviewed.

22.    During the pendency of the investigation, Plaintiff's work materials were
       tampered with, and Plaintiff was compelled to work along side the very person
       she was complaining of.

23.    Plaintiff complained to security and was eventually moved from this area.

24.    The investigation concluded with the determination that Plaintiff's claims were "unsubstantiated."

25.    Plaintiff was further informed that she was to return to her normal duties and that the male co-worker was "not to have any verbal contact" with the Plaintiff.

26.    Plaintiff was also informed at the conclusion of that investigation that her "flex time" would be eliminated and that she would be placed on "straight time."

27.    After the conclusion of the investigation Plaintiff's work product continued to be tampered with in the workplace.

28.    Plaintiff made numerous complaints, but no action was taken on her behalf.

29.    In fact, Plaintiff's job responsibilities were greatly increased, with the defendant demanding that Plaintiff work on the "sort bench" despite Plaintiff's physician's admonition that she could not work the "sort bench."

30.    As a result of the unabated conduct enumerated above, Plaintiff filed a charge of discrimination with the EEOC on March 24, 2009 charging defendant with a continuing pattern of unlawful hostile environment based on sex and sexual discrimination and disparate treatment, in violation of Title VII and the New York State Human Rights Law.

31.   Plaintiff was then subject to a continuing pattern of retaliation in violation of Title
      VII and the New York State Human Rights Law form having made internal
      complaints of sexual harassment, hostile work environment, and for having filed
      her original charge with the EEOC on March 24, 2009.

32.   On the first day back to work after having filed her EEOC charge of March 24,
      2009, Plaintiff requested a job description from Product Manager Longhenry who
      denied this request.

33.   On the first day back to work after having filed her EEOC charge of March 24,
      2009, Plaintiff asked Product Manager Longhenry which "overtime group" she
      would be placed in only to be informed that Plaintiff would not receive overtime.

34.   On or about April 20, 2009, Plaintiff was informed that a manager, Mark Smith,
      would take her to his area to work; Plaintiff asked if she could go see medical as
      she was experiencing an anxiety attack.

35.   When Plaintiff worked in the same area where the male co-worker exposed
      himself, she started having panic attacks because this same male co-worker
      would taunt the Plaintiff with non-verbal intimidating gestures.

36.   Plaintiff requested to be transferred to a position to downtown or Henrietta.

Page -6-

37.    Plaintiff is "looked over" while several other people have been positioned at other Xerox locations since January.

38.    Plaintiff repeatedly asked for a job outside of the area where she felt in good faith that she was violated.

39.    On or about May 20, 2009, Plaintiff was placed in an area where ironically the same male co-worker had a desk placed in the same area, where an aisle stood between them.

40.    Plaintiff did not want to be subject to this male co-worker.

41.    Plaintiff first called her Union representative to no avail.

42.    IR Manager Braithwaite was also asked for assistance, but informed Plaintiff that she was working on an "important matter" and could not be bothered with the Plaintiff.

43.    Plaintiff exhausted all measures with management to lodge a complaint to no avail.

44.    Plaintiff then made a phone call to security to send an officer to document the situation.

45. Don Miller, Plaintiff's Foreman walked up then, along with Dave Maxfield, a supervisor.

46. Plaintiff was asked three times if she needed medical attention, of which she replied "no", that she needed to calm herself, and went into the bathroom in the ladies room, when she ran into Product Manager Longhenry.

47. Plaintiff was on the phone with security, trying again to document the fact that she was having a problem with male co-worker.

48. Suddenly, an emergency tech barged into the ladies room as Plaintiff was exiting a stall and grabbed Plaintiff by the right arm, and informed Plaintiff that "you are going for a walk".

49. Plaintiff was told that if she did not go with him, he would get the stretcher.

50. Plaintiff told this individual "don't touch me"; he was holding Plaintiff tightly, and she asked where they were going, stating "I cannot go that way" [where my anxiety attacks began], subjecting her to further undue duress.

51. Notwithstanding, they started going that way, and Plaintiff further panicked and fell to the ground.

52. The police arrived and Plaintiff was taken to Rochester General where a doctor gave Plaintiff permission to return to work.

53.    The doctor opined that Plaintiff had a right to be upset and that she was not a harm to herself or others.

54.    When Plaintiff returned to Xerox for work, she was checking in with the nurse's office when she overheard management standing in the doorway, openly talking about Plaintiff, asking "was she irrational"? and that "she's paranoid," and it was "a mental thing".

55.    The nurse then informed Plaintiff that she could not return to work until she signed off her medical rights and give up her rights under the ADA for her treating physician and psychiatrist.

56.    Plaintiff was not allowed to return to work despite having received that afternoon from the ER doctor that I was okay to return to work. Plaintiff was sent home with a card with a contact number, should she go on disability.

57.    The next day, on or about May 21, 2009, Plaintiff called the head of security, Kevin Richmond to ask if he could have a copy of the reports recently taken about her when he stated "what you did was wrong, your actions were not proper", and "you have to be held accountable for your actions". He further said "we [Xerox] are not your medical service". He further said "if you have any further issues, you can take it up with your union and management".

58.    Plaintiff believed in good faith that she was set up to be taken out of her employment with the defendant.

59.    The defendant refused to allow the Plaintiff to come back to work even though
       she has an independent doctor allowing her to go back to work.

60.    In the interim, on May 28th, 2009, Plaintiff filed a subsequent charge of
       discrimination with the EEOC alleging retaliation for having engaged in protected
       activity.

61.    On June 29, 2009, Plaintiff was assigned to a "cleaner's" position at Xerox
       Square, at the  downtown, Rochester location, where she is assigned to work the
       2nd shift position with hours of 3:00 p.m. to 12:00 midnight, despite the fact that
       Plaintiff has held a day time position for 21 years with the defendant.

62.    Plaintiff has made several requests to management to be placed in a day time
       position, and Plaintiff has responded to job postings for numerous positions,
       including mail room, groundskeeper and maintenance, only to be looked over
       and have those jobs given to others with lesser seniority in retaliation for having
       engaged in protected activity as set forth above.

## FIRST CAUSE OF ACTION
### DISCRIMINATION IN EMPLOYMENT UNDER TITLE VII

63.   Plaintiff repeats and re-alleges by reference each and every allegations
      contained in the above stated paragraphs and incorporates the same as though
      fully set forth herein.

64.   Defendants, through its agent, engaged in a continuing pattern of unremedied
      race discrimination by subjecting Plaintiff to unwelcome harassment through the
      creation of a hostile work environment based on race in violation of Title VII of
      the Civil Rights Act of 1964, as amended.

65.   Defendant at all times relevant herein had actual and constructive knowledge of
      the conduct described herein.

66.   The above described unwelcome race discrimination by defendant's agent
      created an intimidating, oppressive work environment which interfered with the
      Plaintiff's well being.

67.   As a result of the hostile and offensive work environment, perpetrated and
      maintained by defendants, and each of them, and their failure to protect the
      Plaintiff from further harassment, the Plaintiff suffers from severe emotional
      distress.

68.   Defendants violated Title VII of the Civil Rights Act of 1964, as amended, by
      failing to adequately supervise, control, discipline, and/or otherwise penalize the
      conduct, acts and failures to act of the defendants as described above.

Page -11-

69.    Defendant failed to comply with their duty to take all reasonable and necessary
       steps to eliminate sexual harassment from the workplace and to prevent it from
       occurring in the future.

70.    As a direct and proximate result of the defendant's willful, knowing and
       intentional discrimination against her, Plaintiff has suffered and will continue to
       suffer pain and suffering and extreme and severe mental anguish and emotional
       anguish and emotional distress; she has incurred and will continue to incur
       medical expenses for treatment by health care professionals, and for other
       incidental expenses, and she has suffered and will continue to suffer a loss of
       earnings and other employment benefits and job opportunities.  Plaintiff is
       thereby entitled to general and compensatory damages in amounts to be proven
       at trial.

71.    As a further and proximate result of defendant's violations of Title VII of the Civil
       Rights Act of 1964, as amended, Plaintiff has been compelled to retain the
       services of counsel in an effort to enforce the terms and conditions of the
       employment relationship with defendants and each of them, and has thereby
       incurred and will continue to incur, legal fees and costs, the full nature and extent
       of which are presently unknown to the Plaintiff.   Plaintiff further requests that
       attorney fees be awarded.

72.     Plaintiff is informed and believes, and based thereon alleges, that the
        outrageous conduct of defendant described above was done with fraud,
        oppression and malice, with a conscious disregard for her rights, and with the
        intent, design, and purpose of injuring her.  Plaintiff is further informed and
        believes that defendant authorized, condoned and/or ratified the unlawful
        conduct alleged herein, specifically.  By reason thereof, Plaintiff is entitled to
        exemplary damages from all defendants in a sum to be adduced at trial.

## SECOND CAUSE OF ACTION
## HOSTILE ENVIRONMENT BASED ON RACE UNDER
## NEW YORK STATE EXECUTIVE LAW

73.     Plaintiff repeats and re-alleges by reference each and every allegations
        contained in the above stated  paragraphs and incorporates the same as though
        fully set forth herein.

74.     Defendants, through its agent, engaged in a continuing pattern of unremedied
        race  discrimination by subjecting Plaintiff to unwelcome race discrimination
        through the creation of a hostile work environment based on race in violation of
        The New York State Human Rights Law, ("NYSHRL") Executive Sections 290, et
        seq.  This claim does not raise a novel or complex issue of law.

75.     Defendant at all times relevant herein had actual and constructive knowledge of
        the conduct described herein.

76.     The above described unwelcome race discrimination by defendant's agent
        created an intimidating, oppressive work environment which interfered with the
        Plaintiff's well being.

77.   As a result of the hostile and offensive work environment, perpetrated and
      maintained by defendants, and each of them, by their condonation,   and their
      failure to protect the Plaintiff from further harassment, the Plaintiff suffers from
      severe emotional distress.

78.   Defendants violated the NYSHRL as amended, by failing to adequately
      supervise, control, discipline, and/or otherwise penalize the conduct, acts and
      failures to act of the defendants as described above.

79.   Defendant failed to comply with their duty to take all reasonable and necessary
      steps to eliminate  harassment from the workplace and to prevent it from
      occurring in the future.

80.   As a direct and proximate result of the defendant's willful, knowing and
      intentional discrimination against her, Plaintiff has suffered and will continue to
      suffer pain and suffering and extreme and severe mental anguish and emotional
      anguish and emotional distress; and for other incidental expenses, and she has
      suffered and will continue to suffer a loss of earnings and other employment
      benefits and job opportunities.  Plaintiff is thereby entitled to general and
      compensatory damages in amounts to be proven at trial.

### THIRD CAUSE OF ACTION
### RETALIATION UNDER TITLE VII

81.   Plaintiff repeats and re-alleges by reference each and every allegations
      contained in the  paragraphs stated above  and incorporates the same as though
      fully set forth herein.

82.    Defendants, and each of them, engaged in a pattern of illegal retaliation in
       violation of Title VII of the Civil Rights Act of 1964 by failing to take any remedial
       action whatsoever in regards to Plaintiff's complaints. Defendant had no
       legitimate business reason for any such act. Plaintiff then availed herself of her
       right to file a charge of discrimination under with the EEOC on March 24, 2009,
       May 28, 2009, and August 25, 2009. Shortly after she engaged in protected
       activity she was subject to a myriad of retaliatory adverse job actions including:
       denial of overtime; denial of flex time; being subject to hospitalization against her
       will; not being allowed to return to work even though her doctor approved of
       Plaintiff returning to work; being placed on the night shift after 21 years of
       working days; being placed in a less desirable position of office cleaner; being
       denied transfers to other locations or more desirable job positions.

83.    As a direct and proximate result of defendant's willful, knowing and intentional
       discrimination against her, Plaintiff has suffered and will continue to suffer severe
       mental and emotional anguish, and she has suffered and will continue to suffer
       a loss of earnings and other employment benefits and job opportunities. Plaintiff
       is thereby entitled to general and compensatory damages in amounts to be
       proven at the time of trial.

84.    As a further and proximate result fo the defendant's violations of Title VII,
       Plaintiff has been compelled to retain the services of counsel in an effort to
       enforce the terms and conditions of the employment relationship with defendants
       and each of them, and has thereby incurred and will continue to incur, legal fees
       and costs, the full nature and extent of which are presently unknown to the
       Plaintiff.   Accordingly, Plaintiff requests that attorney fees be awarded.

85.    Defendants conduct as described herein was malicious and oppressive, and
       done with a conscious disregard of Plaintiff's rights.   The acts were performed
       with the knowledge of an employers' economic power over its employees.
       Defendant ratified the unlawful conduct of its employees in this action.
       Consequently, Plaintiff is entitled to exemplary damages from all defendants.

## FOURTH  CAUSE OF ACTION
## RETALIATION AND RETALIATION UNDER NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW SECTION 290 et seq.

86.    Plaintiff repeats and re-alleges by reference each and every allegations
       contained in the above stated  paragraphs  and incorporates the same as though
       fully set forth herein.

87.    Defendants, and each of them, engaged in a pattern of illegal retaliation in
       violation of New York State Human Rights Law, Executive Law Section 290 et
       seq. by failing to take any remedial action whatsoever in regards to Plaintiff's
       complaints.    Defendant had no legitimate business reason for any such act;

Plaintiff then availed herself of her right to file a charge of discrimination under with the EEOC on March 24, 2009, May 28, 2009, and August 25, 2009. Shortly after she engaged in protected activity she was subject to a myriad of retaliatory adverse job actions including: denial of overtime; denial of flex time; being subject to hospitalization against her will; not being allowed to return to work even though her doctor approved of Plaintiff returning to work; being placed on the night shift after 21 years of working days; being placed in a less desirable position of office cleaner; being denied transfers to other locations or more desirable job positions. There was no reason to transfer Plaintiff, a long term employee of the defendant, to the night shift as a cleaner, a position she never held, was never trained for and never worked on the night shift for 21 years.

88. As a direct and proximate result of defendant's willful, knowing and intentional discrimination against her, Plaintiff has suffered and will continue to suffer severe mental and emotional anguish, and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at the time of trial.

89. Defendants conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights. The acts were performed with the knowledge of an employers' economic power over its employees. Defendant ratified the unlawful conduct of its employees in this action. Consequently, Plaintiff is entitled to exemplary damages from all defendants.

**WHEREFORE,** Plaintiff prays that judgment be entered in her favor and against Defendants and each of them for each of the above enumerated causes of action.

Dated: September 3, 2009
       Rochester, New York

Respectfully Submitted By:

/s/ Christina A. Agola, Esq.

Christina A. Agola, Esq.

Christina A. Agola, PLLC

ATTORNEYS FOR PLAINTIFF
2100 First Federal Plaza
28 East Main Street
Rochester, New York 14614
(o)585. 262.3320
(f) 585.262.3325
caagola@agolalaw.com