UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
TAMARA CIULLA-NOTO,

                Plaintiff,        09-CV-6451T

      v.                             **DECISION**
                                        **and ORDER**
XEROX CORPORATION,

                Defendant.
_____

## INTRODUCTION

Plaintiff Tamara Ciulla-Noto, ("Ciulla-Noto") brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), (codified at 42 U.S.C. § 2000(e), et seq.), and the New York State Human Rights Law against her employer Xerox Corporation, ("Xerox") claiming that she was discriminated against on the basis of her race[1]; subjected to a hostile work environment, was retaliated against for complaining of sexual harassment. Specifically, the plaintiff alleges that she was subjected to hostile and inappropriate sexual behavior from a male co-employee, and that she was retaliated against for complaining of the alleged

---

[1] Although Plaintiff's First Cause of Action alleges race discrimination, and that a hostile work environment existed based an racial animus, there is no allegation of racial discrimination in the body of the Complaint, and indeed, plaintiff's race is not even identified. It appears to the Court that plaintiff's attorney Christina Agola may have inadvertently included a claim of race discrimination that was raised in some other, unrelated action. Similarly, plaintiff's Second Cause of Action alleges a racially motivated hostile working environment under New York State Law. Because the Complaint contains no factual allegations claiming discrimination based on her race, I dismiss plaintiff's claims of racial discrimination with prejudice.

harassment. According to the plaintiff, Xerox failed to adequately investigate her claims of harassment, failed to end or prevent the harassment, and retaliated against her by, inter alia, changing her shift, transferring her to less desirable positions, and preventing her from transferring into more desirable positions.

Xerox denies the plaintiff's claims, and contends that it throughly investigated plaintiff's claims, but found them to be unsubstantiated. Xerox further alleges that despite being unable to corroborate the plaintiff's charges, it nevertheless took several steps to prevent the alleged harassment, and accommodated plaintiff's desire not to work in the same area with the alleged harasser. Xerox alleges that any changes to plaintiff's employment resulted from its accommodation of plaintiff's medical restrictions.

Defendant now moves for summary judgment claiming that plaintiff has failed to establish that she was subjected to a hostile work environment, gender discrimination, or retaliation. For the reasons set forth below, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint in its entirety with prejudice.

BACKGROUND

Plaintiff Tamara Ciulla-Noto is a current employee of defendant Xerox Corporation. She began her employment with Xerox in 1988, and has been continuously employed by the company since

that time. During the periods relevant to this action, plaintiff was employed as an "LC1 Operator," and in this capacity, plaintiff, inter alia, refurbished parts from salvaged Xerox equipment to make them suitable for resale.  As an LC1 Operator, plaintiff was a member of an employee union.

Although employees at Xerox generally worked one of three eight-hour shifts, Ciulla-Noto worked independently, and therefore was allowed to work flexible hours, provided she worked eight hours per day.  Plaintiff preferred to work alone, and indeed placed large pieces of cardboard around her workstation so that she could not be seen by other employees.

In 2002, plaintiff filed a claim of sexual harassment against co-worker Tony Morabito.  Xeorox investigated the claim, but could not substantiate plaintiff's claims.

On or about July 1, 2008, plaintiff reported an incident of alleged sexual harassment to her Operations Manager Joy Longhenry ("Longhenry").  According to the plaintiff, co-worker Robert Cook ("Cook"), came into her work area and sat down while wearing jeans with a large hole in the crotch area.  Plaintiff claims that Cook was not wearing underwear at the time, and therefore, when he sat down, he exposed his penis to her.  Plaintiff also reported to Longhenry that Cook, sometime during the previous year, had shown her pornographic images on a work computer.

Within hours of receiving the report of sexual harassment, Longhenry reported the matter to plaintiff's supervisor Donald Miller ("Miller"). Miller and Longhenry then both met with Ciulla-Noto, and advised her that they would be referring the matter to the Human Resources Department for a full investigation. Thereafter, on July 9, 2008, Kimberly Braithwaite ("Braithwaite") of the Human Resources Department, and Xerox Corporate Security Manager Darrell Franklin ("Franklin") met with the plaintiff to take her complaint. During their discussion, plaintiff made an additional allegation against Cook, claiming that in July, 2007, Cook masturbated in her vicinity. Plaintiff also stated that Cook often attempted to rub her shoulders or "rub up" against her.

Following their conversation with Ciulla-Noto, Braithwaite and Franklin conducted an investigation of her complaints. Braithwaite and Franklin interviewed all of the employees who worked in the plaintiff's area, as well as two employees identified by the plaintiff as having information that would be relevant to the investigation. Braithwaite and Franklin also interviewed Cook as part of their investigation. None of the employees interviewed by Braithwaite and Franklin witnessed any inappropriate conduct between Cook and Ciulla-Noto. One of the witnesses identified by plaintiff as having relevant information told Braithwaite and Franklin that in 2006, plaintiff complained to him that she had been bothered by an un-named male coworker. Cook told Braithwaite

and Franklin that while he did wear jeans with holes in them, he always wore underwear, and never exposed himself to Ciulla-Noto or any other employee. Cook denied ever masturbating at work, or displaying pornography to any coworker. A search of the computers used by Cook revealed no evidence of pornography. Plaintiff also alleged during the course of the investigation that Cook had stolen her cellular telephone, but she recanted this claim after she found it in her car.

In August, 2008, plaintiff met with Braithwaite and Franklin to express additional concerns regarding her work environment. She claimed that items in her work area had been tampered with in retaliation for her complaint against Cook. It is undisputed, however, that plaintiff had previously alleged tampering with her work area prior to making her complaint about Cook, including allegations that her locker had been broken into, tape on the floor had been removed, and the handle of her microwave had been broken.

To address plaintiff's concerns regarding alleged tampering, plaintiff was assigned to work the "A" shift, at which time supervisors would be present to monitor her work area and respond to any concerns she might have. A secret video camera was also installed to monitor plaintiff's work area to detect any tampering. Although the camera remained operative for three months, no evidence of tampering was detected.

In September, 2008, plaintiff was transferred to a different work site in a different building so that she would not be "within eyesight" of Cook, per a medical restriction that required that she have no contact, verbal or sight, with Cook.

In October, 2008, Braithwaite and Franklin concluded their investigation, and informed plaintiff that they had been unable to substantiate her claims of sexual harassment. Despite not finding evidence to substantiate plaintiff's claims, Xerox instructed Cook-both verbally and in writing-that he was to have no contact with the plaintiff. Ciulla-Noto was informed that Cook had been instructed to have no contact with her.

In November, 2008, plaintiff returned to her original workstation, and worked on the "A" shift, when supervisors were present to monitor her working conditions and environment. Plaintiff, however, stated that she could not work at her station because she experienced "flashbacks" related to the previous harassment she allegedly she suffered. Plaintiff informed plant manager David Maxfield ("Maxfield") at this time that she had a dream in which she was able to kill Cook. Maxfield advised plaintiff to obtain a doctor's note if she claimed that she could not perform her job because of medical reasons, and reminded her of Xerox's workplace policies which prohibit the making of threatening statements.

In December, 2008, Maxfield again met with the plaintiff because she claimed that she was unable to work in the same general area as Cook. She again referenced killing Cook, which defendants claim was a threat, and plaintiff alleges was simply an explanation of dream she had. Pursuant to Xerox policy, Maxfield filed a report with the company detailing plaintiff's alleged threats. Thereafter, plaintiff obtained a doctor's note stating that she was restricted from working in the "sort bench area" of her work station because she suffered from "flashbacks." Plaintiff was not disciplined for allegedly making threats about Cook.

In May, 2009, plaintiff complained that she was able to see Cook when she entered and exited her work area. According to the defendant, Cook was located approximately 35 feet away from the plaintiff's work area. Plaintiff did not complain that Cook interacted with her or engaged in any inappropriate behavior, but simply that Cook was visible to her. When Maxfield and a security employee attempted to discuss the matter with the plaintiff, she refused to discuss the matter, and secluded herself in a women's bathroom. Plaintiff disputes the contention that she refused to come out of the bathroom, and claims that an emergency response worker came into the bathroom, grabbed her, verbally abused her, and threatened to remove her forcefully if she did not exit the bathroom. Defendants counter that an emergency response worker was dispatched only after plaintiff refused to exit the bathroom, and

7

that the emergency worker never threatened or verbally abused Ciulla-Noto, but merely attempted to get her to leave the bathroom and seek medical help. Once a security worker indicated that police would be called, plaintiff came out of the bathroom, and was taken to Rochester General Hospital, where she was diagnosed with anxiety and panic attacks, and was advised to seek mental health treatment. Shortly thereafter, plaintiff produced a medical note from her doctor stating that she was to have no contact with Cook.

In an attempt to accommodate plaintiff's medical restriction stating that she was to have no contact with Cook, plaintiff was transferred to a cleaning position at a location in downtown Rochester, New York, several miles from the Webster, New York location where she had previously been working. In November, 2009, plaintiff was transferred to a cleaner position at a different location that accommodated her restriction of no contact with Cook. In August, 2010, plaintiff was transferred to a job in the dock area of a building at the Webster, New York campus, but continued to have no contact wit Cook. At no time were plaintiff's benefits or pay ever modified or reduced as a result of her transfers.

DISCUSSION

I. <u>Defendant's Motion for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. Scott v. Harris, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Scott, 550 U.S. at 380 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)).

    II.  Hostile Work Environment Claim

Plaintiff alleges that the alleged harassment she received from Cook created a hostile work environment based on gender discrimination. To state a claim of discrimination based on a hostile work environment, a plaintiff must first establish the existence of a workplace that is "permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Torres v. Pisano, 116 F.3d 625, 630-631 (2d. Cir.1997) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "Conduct that is merely offensive and not severe or pervasive enough to create an objectively hostile or abusive work environment" will not establish a Title VII discrimination claim. Torres, 116 F.3d at

631 (2d Cir.) (internal quotes omitted); Gallagher v. Delaney, 139 F.3d 338, 346 (2d Cir.1998) ("A reasonable person would have to find the environment hostile or abusive, and the victim must have subjectively so perceived it."). "Stray racial remarks or slurs are not actionable under Title VII." Badrinauth v. Touro College, 1999 WL 1288956, *4, (E.D.N.Y. Nov. 4, 1999). Rather, "there must be a steady barrage of opprobrious racial comments." Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir.1986). The conduct alleged, however, does not need to be so severe as to cause severe emotional or physical distress. Harris, 510 U.S. at 21. Rather, conduct that "detract[s] from employees' job performance, discourage[s] employees from remaining on the job, or keep[s] them from advancing in their careers" may be actionable under Title VII. Harris, 510 U.S. at 21.

If a plaintiff is able to demonstrate the existence of a hostile work environment, the plaintiff must then establish that the hostile work environment may be imputed to the employer for purposes of establishing the employer's liability. Wright v. Monroe Community Hosp., Slip Copy, 2012 WL 3711743, *1 (2nd Cir., August 29, 2012)(quoting Alfano v. Costello, 294 F.3d 365, 373 (2d Cir.2002). A plaintiff may establish an employer's liability for harassment or a hostile work environment where the "employer 'failed to provide a reasonable avenue for complaint or if it knew, or in the exercise of reasonable care should have known, about the

harassment yet failed to take appropriate remedial action.'" Wright, 2012 WL 3711743, at *1 (quoting Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir.2000).

In the instant case, I find that even if the plaintiff could establish the existence of a hostile working environment based on sexual harassment, she has failed to establish that Xerox should be liable for the creation, continuation or countenance of such an environment. It is undisputed that Xerox provided plaintiff with a reasonable avenue for complaining of sexual harassment or a hostile working environment. Indeed, it is undisputed that plaintiff availed herself of the defendant's resources for complaining of sexual harassment, and that Xerox investigated her complaints. While plaintiff now alleges that the investigation was incomplete because the defendant failed to interview two potential witnesses (including one witness who was the husband of an employee), there is no requirement that the person complaining of harassment be satisfied with the investigation of his or her complaint or the outcome of any investigation. Davis-Bell v. Columbia University, 851 F.Supp.2d 650, 684-85 S.D.N.Y., 2012)("Title VII confers on a plaintiff no right to choose the remedy to end the harassment or demand that a workplace dispute be resolved in the way that is most attractive to her.")(quoting Lee v. Sony BMG Music Entertainment, Inc, 2010 WL 743948, at *9). Rather, in cases where an employee has complained of harassment or

discrimination by a co-worker, a company satisfies its obligation to provide a reasonable avenue for complaint where the remedy provided by the employer is "sufficiently calculated to end the harassment." Murray v. New York Univ. Coll. of Dentistry, 57 F.3d 243, 250 (2d Cir.1995)

In the instant case, the undisputed facts demonstrate that Xerox's response to plaintiff's complaints did in fact end the alleged harassment.  Despite having found that plaintiff's claims of harassment were unsubstantiated, Xerox took significant steps to ensure that Ciulla-Noto would not be subjected to any future harassment by Cook.  First, Xerox warned Cook both verbally and in writing that he was not to have any contact with the plaintiff.  There is no dispute that Cook headed this warning, and did not have contact with plaintiff during working hours.  While plaintiff claims that she saw Cook at a funeral, she acknowledged that it was not Xerox's fault that she saw him there. Moreover, Xerox modified plaintiff's hours to ensure that she would only be working when supervisors were present, thus affording her the ability to immediately complain of any allegedly harassing activity, and have such complaints addressed immediately.  Xerox further installed a hidden camera in an attempt to obtain evidence of alleged harassment, or retaliation for complaining of harassment.  Accordingly, the record reveals that Xerox provided a reasonable avenue of complaint for the plaintiff;  that Xerox responded to her

complaints in a manner designed to end the alleged harassment; and that Xerox's response did in fact end the alleged harassment by Cook that the plaintiff complained of.

Xerox, however, made even further accommodations to the plaintiff not required under Title VII. When plaintiff claimed that she was unable to work in certain locations because they gave her "flashbacks" of the alleged harassment, Xerox accommodated this request (once she provided medical documentation of her inability to work in these locations) by allowing her to work in a different location. Later, when the plaintiff claimed that she could not work within "eyesight" of Cook, Xerox accommodated this restriction by transferring her to different locations. At no time were plaintiff's pay or benefits diminished by the transfers to different positions. And while plaintiff may not have been satisfied with the accommodations offered by Xerox, as stated above, a plaintiff is not entitled to her preferred resolution of a complaint of discrimination, only a resolution reasonably calculated to end the discrimination. <u>Davis-Bell</u>, 851 F.Supp.2d at 684-85 Because Xerox provided an avenue for plaintiff to complain of discrimination, and because the defendant reasonably responded to plaintiff's complaint, I grant defendant's motion for summary judgment with respect to plaintiff's claims for sexual harassment and hostile work environment discrimination, and dismiss these claims with prejudice.

III. <u>Retaliation Claims</u>

Plaintiff alleges that after she complained of discrimination to Xerox management, she was retaliated against by, <u>inter alia</u>: (1) having her work place tampered with; (2) having her job duties altered; (3) having her "flex" time rescinded; (4) being prevented from returning to work after taking time off; and (5) being denied the opportunity to transfer to other jobs.

To state a claim for retaliation, a plaintiff must establish: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff or action that would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the protected activity and adverse action. <u>Burlington Northern & Santa Fe Railway Co. V. White</u>, 548 U.S. 53, 68 (2006); <u>Holt v. KMI-Continental</u>, 95 F.3d 123, 130 (2d Cir. 1996), <u>cert</u>. <u>denied</u>, 1997 WL 71191 (May 19, 1997); <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1308 (2nd Cir. 1995) (citations omitted). Acts that do not lead to materially adverse employment actions, or that would not dissuade a reasonable employee from making a complaint of discrimination, will not be considered retaliatory acts. <u>Morris v. Lindau</u>, 196 F.3d 102, 110 (2d Cir.1999)

Should the plaintiff state a claim for retaliation, the defendant may then articulate a non-discriminatory, legitimate reason for taking the action complained of, and the burden then

shifts to the plaintiff to show that the employer's articulated reason is both untrue and a pretext for the true retaliatory motive. Id.

In the instant case, I find that plaintiff has failed to establish that she was subjected to retaliatory conduct following her complaint of discrimination to Xerox. With respect to her claim that her work area was tampered with, the undisputed evidence reveals that plaintiff had complained that her work area had been tampered with both before and after she complained of harassment. It is axiomatic that acts which took place before the complaint of discrimination could not have been taken in retaliation for complaining of discrimination. Nor has plaintiff submitted any evidence that the alleged tampering took place as a result of her complaint. Plaintiff has not identified any person who allegedly tampered with her work area, and has not adduced any evidence to suggest that the tampering was related to her complaint of harassment.

Plaintiff alleges that she was retaliated against because after she complained of harassment, she was required to work the "sort bench" area. This claim, however, fails to state a claim for retaliation. It is undisputed that working in the sort bench area was part of plaintiff's job requirements, and accordingly, requiring her to do one of her job functions can not, as a matter of law, constitute retaliation. See Ross-Caleb v. City of

15

Rochester, 836 F.Supp.2d 114, 126 (W.D.N.Y., 2011)("To establish a claim of an adverse action . . . a plaintiff must demonstrate the adverse action is one that would likely dissuade a reasonable employee from engaging in a protected activity.")(citing Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68, (2006). Moreover, it is further undisputed that even though plaintiff was asked to work in the sort bench area, she refused to because she feared "flashbacks" if she returned to that area, and Xerox never forced her to work in the area.  Rather, Xerox accommodated plaintiff's request not to work in the sort bench area, and found alternative work assignments for her.

Plaintiff alleges that after she complained of harassment by Cook, she was no longer allowed to work flex time, but instead was required to work a straight daytime shift.  The defendant has presented evidence that plaintiff was rescheduled to the day shift to ensure that plaintiff would not be working with Cook when no supervisors were present, and to ensure that supervisors would be available to immediately address any concern the plaintiff had with respect to harassment, tampering, or retaliatory acts.  Plaintiff has failed to produce any evidence that the defendant's proffered explanation is not worthy of credence, nor has she produced evidence that the change in her work shift was made with any retaliatory animus.  Accordingly, I find that she has failed to

state a claim of retaliation with respect to the change of her shift from flex time to the day time shift.

Plaintiff alleges that after she was escorted from the building and transported to Rochester General Hospital in May, 2009, she was prevented from returning to work for a short time thereafter in retaliation for making a complaint of discrimination. Aside from plaintiff failing to allege any causal connection between her discrimination complaint and the alleged refusal to allow her to immediately return to work after being taken from work to Rochester General Hospital, plaintiff admitted that she took this time off voluntarily. See Deposition Transcript of Tamara Ciulla-Noto at p. 436, l 15-18. Accordingly, plaintiff's allegation fails to state a claim for discrimination.

Plaintiff claims that she was denied opportunities to transfer to jobs that would accommodate her medical restrictions requiring that she have no contact with Cook, and not work in locations that caused her to remember the alleged incidents of harassment. It is undisputed, however, that plaintiff never applied for any of the positions she allegedly sought. Because plaintiff never applied for the positions she was allegedly prevented from obtaining, she can not state a claim for retaliatory failure to hire. Ikewood v. Xerox Corp., 2011 U.S. Dist. Lexis 4385 *18 (W.D.N.Y., Jan. 18, 2011). Moreover, defendant has presented uncontroverted evidence that one of the positions allegedly sought by the plaintiff was

outsourced to a contractor, and therefore, no such position existed. With respect to another position, there were no openings during the time period plaintiff allegedly wanted to apply for such a position. Plaintiff further admitted that the jobs she was interested in were filled by then current Xerox employees whose jobs had been eliminated, and therefore, under Xerox policy, received preferential status when applying for open positions. See Deposition Transcript of Tamara Ciulla-Noto at p. 267-268. Further, plaintiff has failed to provide any evidence that the employees hired for the jobs that she never applied for, but felt was denied from obtaining, were similarly situated to her. Plaintiff has provided no evidence regarding the employment history, work skills, or qualifications of the hired employees, and by failing to provide such evidence, has failed to establish that she was treated differently than similarly situated employees.

With respect to plaintiff's remaining allegations of retaliation, I find that she has failed to allege any valid cause of action.

### IV. State Law Claims

Claims brought under the New York Human Rights Law are analytically identical to claims brought under Title VII. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 (2nd Cir. 1996). See Haywood v. Heritage Christian Home, Inc., 977 F.Supp. 611, 613 (W.D.N.Y. 1997)(Larimer, C.J.)(Noting that both claims are governed

18

by McDonnell Douglas standard.).  Accordingly, for the reasons stated above, defendant's motion for summary judgment with respect to plaintiff's state law retaliatory discrimination claims under the New York Human Rights Law is granted.

## CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          December 4, 2012